**KECO INDUSTRIES, INC.**

v.

**The UNITED STATES.**

**No. 173–69.**

United States Court of Claims.

July 15, 1970.

Paul W. Steer, Cincinnati, Ohio, attorney of record, for plaintiff. Steer, Strauss, White & Tobias, Cincinnati, Ohio, of counsel.

Steven L. Cohen, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COLLINS, Judge.

This case is before the court on defendant's motion for summary judgment and plaintiff's opposition thereto. The two main questions involved are whether plaintiff has standing to maintain an action which involves the award by the Government of a contract to another, and whether plaintiff has raised enough of an inference of arbitrary and capricious action on the part of the Government to create a triable issue of fact. For reasons to be hereinafter stated, we conclude that plaintiff does have standing to sue, and that it has raised an issue of fact which should be resolved by the trial commissioner.

Plaintiff, Keco Industries, is a "Small Business" corporation organized and existing under the laws of the State of Ohio, with its principal offices in Cincinnati. It is engaged in the business of manufacturing specialized air conditioning and does substantially all of its work either directly or indirectly for the Government.

On February 3, 1966, defendant, acting through the San Antonio Air Mate-

riel Command, solicited bids for the purchase of certain air conditioning units. This invitation for bids was canceled several months later because of numerous questions asked by prospective bidders. On April 12, 1966, defendant initiated step one of a two-step procurement, which was to issue a Letter Request for Technical Proposal (LRFTP). Under a two-step procurement, which is usually used when the Government cannot provide detailed specifications to the bidders, the Government requests the bidders, who have the necessary technical knowledge, to furnish first a technical proposal. Armed Services Procurement Reg. (ASPR) § 2–501, 32 C.F.R. § 2.501 (1966). If the proposal is acceptable, then the bidder is asked to submit a conventional bid price based on his own presentation and the Government specifications. ASPR § 2–503.2(iii), 32 C.F.R. § 2.503–2(c) (1966).

In this case, three technical proposals were submitted. One was declared inadequate; and two, that of plaintiff and that of Acme Industries, Inc. (Acme), were found to be acceptable. Acme's technical proposal contained two deviations from the requirements of the specifications. One deviation consisted of a proposal to use a V-belt (indirect drive) rather than direct drive to power the compressor. In the other deviation, Acme proposed to operate the cooling fan by use of an electric motor driven by an AC generator rather than the unit's battery. Defendant accepted Acme's proposed deviations and incorporated them into the amended specifications, which were then issued to both parties. Plaintiff and Acme were then asked to submit bid prices based on their own technical proposals and the amended specifications.

Bids were received in time on June 10, 1966, with plaintiff's bid exceeding that of Acme by approximately 66 percent.[1] Because of this great disparity, Acme was requested to verify its bid price which it did on June 15, 1966. The contract was then awarded to Acme on July 6, 1966.

Subsequent to the award of the contract, Acme began to encounter certain problems in connection with its performance under the contract. For instance, its proposal to drive the compressor by use of a V-belt drive arrangement could not be accomplished without certain changes and additions which would greatly increase the cost. Also Acme found that it could not operate the cooling fan by an electric motor without the substitution of a 100-ampere alternator for the 25-ampere generator, required by the original specifications. This likewise would greatly increase the cost over what had been contemplated in Acme's bid.

Acme's request for the necessary changes, additions, and substitutions was granted by the Government, and the appropriate contract change notices were issued. On September 8, 1966, Contract Change Notice No. 1 authorized Acme to use a 100-ampere alternator rather than a 25-ampere generator, thus adding approximately $135,000 [2] to the contract price. Contract Change Notice No. 3, permitting and directing Acme to employ an adaptation to the compressor so as to allow for V-belt drive, increased the contract price by $154,355.[3]

Plaintiff filed a protest on September 14, 1967, with the General Accounting Office (GAO), asserting that Acme should be liable financially for the above-mentioned contract modifications. In his Opinion, B–162538,[4] dated August

---

1. For each of the 3 program years involved, Acme's bid price was $7,500 per unit, as opposed to plaintiff's bid price of $12,200 per unit. The contract called for a quantity of 100 units per year.

2. This figure was based on a determination of $1,350 per unit for 100 units.

3. The result of both contract changes was to increase the unit price from $7,500, quoted in Acme's bid, to $10,393.55. Opinion of the Comptroller General, 13 C.C.F. ¶ 82,080 at 87,558 (1968).

4. Opinion of the Comptroller General, 13 C.C.F. ¶ 82,080 (1968).

15, 1968, and in a supplemental letter dated January 13, 1969, the Comptroller General found that, with respect to contract change No. 1 defendant had acquiesced in Acme's proposal to use a 100-amphere alternator by failing to inform Acme that only a 25-amphere generator would be supplied. With respect to contract change No. 3, the Comptroller General ruled that defendant knew, in effect, at the time of the award, that the compressor could not be driven by a V-belt. Consequently, it was held that Acme should not be financially liable for either of the change orders since both were due to defendant's error.

Plaintiff has now instituted action in this court alleging that, in awarding the contract in question to Acme, defendant violated certain sections of the Armed Services Procurement Regulations, and that, since defendant knew that Acme's technical proposal could not be accomplished within its specified pricing bid, defendant's action in awarding the contract to Acme amounts to a breach of its implied contract to fairly and honestly consider and evaluate plaintiff's bid. Plaintiff is seeking to recover its cost in preparing and submitting its technical proposals and bid as well as its loss of anticipated profits.

The first issue which must be decided is whether plaintiff has standing to sue. Defendant urges the court to follow the long-standing rule in regard to suits by bidders, which is that most statutes governing the awarding of bids by governmental agencies are enacted for the benefit of the public, who are served by these agencies, and not for the benefit of the bidders. As a result, the general rule has been that bidders have no right to sue on the ground that the provisions of a bidding statute have been violated. Heyer Prods. Co. v. United States, 140 F.Supp. 409, 412, 135 Ct.Cl. 63, 68

(1956); see Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); American Smelting & Ref. Co. v. United States, 259 U.S. 75, 42 S.Ct. 420, 66 L.Ed. 833 (1922); United States v. New York & Porto Rico S.S. Co., 239 U.S. 88, 36 S.Ct. 41, 60 L.Ed. 161 (1915). On the other hand, plaintiff contends that this general rule prohibiting suits by wronged bidders should no longer be accorded any weight as it is not in the public interest. Plaintiff also urges that, regardless of this rule, it does have standing based on Heyer Prods. Co. v. United States, *supra,* and Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (Feb. 13, 1970).

The *Heyer* case dealt with a situation where the plaintiff was the low bidder on a Government contract, and yet the contract was awarded to a company which had submitted a bid almost twice as great as plaintiff's. Plaintiff alleged that the award by the agency was not made in good faith but was in retaliation for testimony plaintiff had given against the agency in a Senate hearing. This court held that, while still recognizing that bid statutes are for the benefit of the public and not bidders, nevertheless, it is an implied condition of a request for bids that each one will be honestly considered, and the bid which, in the honest opinion of the contracting officer, is the one most advantageous to the Government will be accepted. Consequently, it was held in *Heyer* that assuming the facts as alleged by plaintiff were true, defendant had breached its implied promise to plaintiff since it had already decided prior to the opening of the bids who would receive the contract award. The court felt that the advertisement for bids was nothing but a sham, a fraud, and a false representation that all bids would be honestly considered.[5]

---

5. In the *Heyer* case, this court considered only the question of whether plaintiff had alleged a cause of action sufficient to warrant a trial of the merits. In a subsequent case, Heyer Prods. Co. v. United States, 177 F.Supp. 251, 147 Ct.Cl. 256 (1959), this court ruled that plaintiff's bid was not rejected in bad faith or arbitrarily or capriciously. Instead, it was found that plaintiff's bid was rejected be-

In the very recent case of Scanwell Laboratories, Inc. v. Shaffer, *supra,* the United States Court of Appeals for the District of Columbia Circuit discussed in great detail the question of whether a wronged bidder should have standing to sue. In that case, the plaintiff, who was the second low bidder on a contract dealing with instrument landing systems, argued that the bid of the low bidder was nonresponsive and should have been declared null and void since it was in violation of one of the provisions of the invitation for bids.[6] In dealing with the theory that bid statutes are enacted for the public and not bidders, the *Scanwell* court stated:

> The public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit brought by one who suffers injury as a result of the illegal activity, but the suit itself, is brought in the public interest by one acting essentially as a "private attorney general."

*Id.* at 864. In addition the circuit court of appeals found that the approach taken by the Supreme Court in such cases as Perkins v. Lukens Steel Co., *supra,* has been legislatively reversed by the Congress, so that now Congress clearly "favors review for those who are likely to be injured by illegal agency action in the context of government contracting." *Id.* at 867. The court in *Scanwell,* therefore, concluded that where "a prima facie showing of illegality is made, the question is uniquely appropriate for judicial determination; a plea that such actions are reserved to agency discretion

will not be allowed to deny review." *Id.* at 875.

We feel that, as a result of *Scanwell* a party, who can make a prima facie showing of arbitrary and capricious action on the part of the Government in the handling of a bid situation, does have standing to sue. At the same time, the decision of this court in *Heyer* also indicated that there were some instances in which a bidder would be allowed to bring an action against the Government. Even though the *Heyer* case was concerned with a situation where there was strong evidence of bad faith and intentional fraud on the part of the Government, we do not feel that *Heyer* was intended to be limited only to such an obvious type case; nor do we feel that *Heyer* was meant to apply only to those situations involving favoritism or discrimination. *But see* Robert F. Simmons & Associates v. United States, 360 F.2d 962, 175 Ct.Cl. 510 (1966).[7] Instead, we find that *Heyer* stated a broad general rule which is that every bidder has the right to have his bid honestly considered by the Government, and if this obligation is breached, then the injured party has the right to come into court to try and prove his cause of action. Thus, even without *Scanwell,* we feel that plaintiff should be allowed to maintain this action based on the decision in *Heyer.*

However, *Scanwell,* with its very complete and thorough coverage of the "standing" question, appears to conclusively settle the issue in favor of plaintiff in this case. The court in *Scanwell* started out with a discussion of the ear-

cause the sample submitted did not comply with the testing specifications.

6. The provision required that the bidder must already have an operational system installed and tested in at least one location. Plaintiff alleged that the low bidder in this case did not have a system installed in one location, nor did it have a certificate of performance based on an FAA flight check.

7. There have been a number of cases in this court in which a bidder has sought

to recover damages based on the *Heyer* decision. However, in none of these cases was the plaintiff allowed to recover. Trans Int'l Airlines, Inc. v. United States, 351 F.2d 1001, 173 Ct.Cl. 312 (1965); Green Manor Constr. Co. v. United States, 169 Ct.Cl. 413 (1965); Iscow v. United States, 161 Ct.Cl. 875 (1963); Locke v. United States, 151 Ct. Cl. 262, 283 F.2d 521 (1960); Keco Indus., Inc. v. United States, 149 Ct.Cl. 837 (1960), cert. denied, 365 U.S. 815, 81 S.Ct. 697, 5 L.Ed.2d 694 (1961).

ly developments in the area of "standing to sue," such as the "legal right" theory, as espoused in Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), and the "person aggrieved" theory found in FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940). Another development came in the case of Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942), in which the Court allowed a person to assert a position which protected a public rather than a specific private interest. The court in *Scanwell* was particularly in agreement with this *Scripps-Howard* decision since it felt that "there should be some procedure whereby those who are injured by the arbitrary or capricious action of a governmental agency or official in ignoring those procedures can vindicate their very real interests, while at the same time furthering the public interest." Scanwell Laboratories, Inc. v. Shaffer, *supra* at 10.

■ With the passage of section 10 of the Administrative Procedure Act, 5 U.S.C. § 702 (Supp. IV, 1965–68),[8] Congress repeated through legislation what the judiciary had already said in prior cases. Later cases have since made it clear that judicial review of agency action will not be denied unless there is clear and convincing evidence of a contrary legislative intent. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). It was found in *Scanwell* that in the field of Government contracting there was no such contrary legislative intent. After showing how the approach of the Supreme Court in *Perkins* had been legislatively reversed by Congress, the *Scanwell* court then proceeded to discuss some more recent cases in this area. The conclusion was that the trend of those cases indicates that allegations of illegality such as those made by the plaintiff in *Scanwell* constitute a suffi-

cient basis for standing. The court placed particular emphasis on Friend v. Lee, 95 U.S.App.D.C. 224, 221 F.2d 96 (1955), which held that, even in the absence of the language of the Administrative Procedure Act, a prima facie showing of arbitrariness would be enough to entitle plaintiff to a hearing. Thus, the *Scanwell* court concluded that with both a prima facie showing of abuse of discretion and with the language of the Administrative Procedure Act, applying in full, there was no way that it could justify denying plaintiff a right to sue.

■ We are persuaded by this very thorough presentation in *Scanwell* that the law, as it now stands, supports plaintiff's position, allowing it the right to maintain this action. We cannot agree with defendant's argument that *Scanwell* must be limited only to those cases in which plaintiff is seeking to void the award of a contract. The holding of *Scanwell* is broad enough to grant standing to a party seeking personal money damages as well as to one acting as a quasi attorney general for the benefit of the public. Regardless of the fact that plaintiff in the instant case is seeking money damages, it is still requiring the Government to enforce its regulations fairly and honestly and treat all bidders without discrimination. Thus, plaintiff is acting both for itself and the good of the public. *See* Associated Indus., Inc. v. Ickes, 134 F.2d 694, 704 (2d Cir.), vacated as moot, 320 U.S. 707, 64 S.Ct. 74, 88 L.Ed. 414 (1943). We conclude, therefore, that, based on the *Scanwell* and *Heyer* cases, plaintiff should be allowed standing to maintain this action, provided it can give prima facie evidence of arbitrary and capricious action on the part of defendant.

■ Plaintiff's allegation of arbitrary and capricious action is premised primarily upon the fact that the Government knew, or at least should have known, at the time of Acme's proposal

---

8. This provision of the Administrative Procedure Act reads as follows:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

that the Acme compressor arrangement would not work. This allegation of actual or constructive knowledge is strongly supported by the language of the Comptroller General in a letter dated January 13, 1969, supplementing his opinion of August 15, 1968. On page 2 of the letter, the Comptroller General stated:

By letter dated November 13, 1968, Headquarters, United States Air Force advised our Office to the effect that after examination of Acme's memorandum and extensive inquiry into the factual issues raised therein, the conclusion had been reached that while the Air Force did not have actual knowledge that V-belt drive would be a problem [in Acme's original design], *the Air Force did have information available and access to additional information that could have raised the question of the unsuitability of the V-belt drive for the Government furnished compressor. \* \* \**

In view of such statements by the Air Force, we conclude that, in the peculiar circumstances of this case, *the actual information in the hands of the Air Force personnel responsible for the procurement with respect to the Government furnished compressor was sufficient to require such personnel to question the feasibility of the Acme design shown in its technical proposal, and since the answer to the problem was readily available to the Air Force but not to Acme, such information may be considered as tantamount to actual knowledge. \* \* \** [emphasis added.]

Also, in the Opinion of the Comptroller General at page 18, it was said, quoting from a memorandum dated June 16, 1967:

"The Government has used this compressor in many cases, in fact the Government engineers have stated it is somewhat of a 'standard' compressor within the Air Force. \* \* \* This same presumption operates as to the Government in circumstances where the contractor made it clear that he lacked data on the GFP, that his calculations were based on another compressor, the Government used the GFP compressor in many applications, the Government wrote specifications using the GFP compressor and notwithstanding these facts, amended the specification in this case to utilize the GFP compressor in the design proposed by Acme. As has been stated previously the Government was under no compulsion to have done this, but having done so, *it assumed the consequences by reason of its position as the possessor of superior knowledge which Acme stated they did not have and could not get. \* \* \**" [Emphasis added.]

Again on page 20 of the same opinion, it was stated:

"In addition, the Government approved the contractor's design and issued a contract requiring the items to be produced in accordance with the specification, utilizing the Government property *which it knew, or should have known, was not suitable for the purposes intended by the parties. \* \* \**" [Emphasis added.]

These statements by the Comptroller General certainly lend enough support to plaintiff's allegation of actual or constructive knowledge that, for purposes of this motion, we must accept plaintiff's allegation as being true. Thus, the fact that the Government accepted Acme's proposal, which it knew would not work, clearly raises an inference of arbitrary and capricious action on the part of defendant in awarding the contract to Acme. Since defendant knew that Acme's unworkable proposal would have to be changed, this meant that the contract price would have to be increased—possibly above the price quoted by plaintiff in its bid. Consequently, plaintiff's position is that defendant was awarding the contract to Acme without really knowing for sure that Acme's performance would be less costly than

plaintiff's.[9] This amounts to a sufficient allegation by plaintiff of arbitrary and capricious action on the part of the Government and clearly is a violation of the rule laid down in *Heyer* that bids should be fairly and honestly considered. *See also* 45 Comp.Gen. 487 (1966), where the Comptroller General ruled that when a contracting officer learns of a deficiency in the technical proposal of the low bidder after the opening of the bids under the second step of a two-step procurement, he is required to reject the low bid as unresponsive.

Plaintiff also alleges that defendant did not abide by its own regulations,[10] which would bring the case directly under the facts of *Scanwell* which involved a contract award contrary to the provisions in the invitation for bids. However, we do not feel it necessary to explore this particular contention since we find that plaintiff has already made out an allegation of arbitrary and capricious action sufficient to warrant a trial. Therefore, we will leave this particular point to be decided by the trial commissioner in connection with his examination of whether defendant's action in awarding the contract to Acme was *in fact* arbitrary or capricious.

■ It must be pointed out that the standard of proof to be applied in cases where arbitrary and capricious action is charged should be a high one. Final decisions should be based on the particular circumstances of each case. It will remain for plaintiff to meet this high standard by proving to the commissioner that such arbitrary and capricious action as alleged did in fact exist.

■ One other point which should be disposed of at this time concerns the question of damages. Plaintiff claims that it is entitled to recover both bid preparation costs and lost profits. We find, however that it would be improper for this court to award plaintiff lost profits since the contract under which plaintiff would have made such profits never actually came into existence. Heyer Prods. Co. v. United States, 140 F.Supp. 409, 412, 135 Ct.Cl. 63, 69 (1956). Also, there is no way that it could be said for certain that had Acme's bid been rejected, the award would have been made to plaintiff.[11] Consequently, if it should be determined subsequently by the commissioner that plaintiff's bid was not treated honestly and fairly by the Government, then plaintiff should be allowed to recover only those costs incurred in preparing its technical proposals and bid.

Defendant's motion for summary judgment is hereby denied and plaintiff's petition is remanded to the trial commissioner for a full determination of whether defendant's action in awarding the contract to Acme was such as to amount to arbitrary and capricious action in regard to plaintiff.

9. Defendant has asserted that since Acme's contract price, after the changes in the contract, was still less than plaintiff's bid price, then the fact that defendant knew that Acme's proposal would not work is irrelevant. Assuming for the moment that Acme's changed contract price was less than plaintiff's bid price, defendant's argument is still invalid. The important point is that, at the time of the bid proposals, there was a possibility that Acme's price would exceed plaintiff's. Defendant's disregard of this factor is what may make its action arbitrary and capricious.

10. Specifically plaintiff contends that defendant did not abide by ASPR § 2–503.2 (iii), 32 C.F.R. § 2.503–2(c) (1966).

11. The Government is entitled under 10 U.S.C. § 2305(c) (1964) to reject all bids "if the head of the agency determines that rejection is in the public interest." *See, e. g.,* Robert F. Simmons & Associates v. United States, *supra.*