**LA STRADA INN, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 671–85C.**

United States Claims Court.

March 31, 1987.

John Ruskin, New Orleans, La., attorney of record, for plaintiff.  Frank A. Silvestri and Silvestri & Massicot, of counsel.

Jonathan S. Baker, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.  Stephen L. Olschner, Office of counsel, New Orleans Engineering Dist., New Orleans, La., of counsel.

## OPINION

WIESE, Judge.

Plaintiff, the low bidder on a Government solicitation for a contract to furnish meals and lodging to prospective military personnel, was found ineligible for award on account of deficiencies noted during a pre-award facilities survey.  In this suit,

filed here some ten months after award of the contract in question, plaintiff asks for recovery of (i) bid preparation costs, (ii) lost profits, and (iii) attorney's fees, expenses, and court costs. Additionally, the court is asked to redirect award of the contract's remaining term to plaintiff or, in the alternative, to require the agency to resolicit the contract in its entirety.

Defendant has moved for summary judgment, and plaintiff opposes. Based on the parties' written submissions and the argument heard on February 27, 1987, the court concludes that defendant is entitled to summary judgment on all issues in the case, except the claim for bid preparation costs. As to the latter, more facts are needed.

*Facts*

Plaintiff operates a hotel in New Orleans, Louisiana. In August 1984, it submitted what turned out to be the lowest bid in a solicitation by the Corps of Engineers for a fixed-price contract to provide meals and lodging for armed forces applicants in the New Orleans area. As required by regulation, a pre-award survey of plaintiff's facilities was conducted by the Defense Contract Administration Services Management Area ("DCASMA") to determine whether plaintiff was a responsible bidder, *i.e.*, whether it possessed the requisite financial, technical, production and managerial resources to perform the work in accordance with the requirements given in the solicitation. Based on this on-site survey, DCASMA prepared a report recommending against award of the contract to plaintiff because of shortcomings in quality assurance standards.[1]

In addition to the survey of the hotel's physical condition, the report form also contained an entry asking whether the prospective contractor had previously furnished similar services to the Government. In response to that entry, DCASMA's report noted: "Offeror performed on Con-

tract Number DACA–29–80–D–0305 for similar service, however extreme difficulties were experienced by the government." No further explanation of these difficulties was given.

As indicated, the on-site survey resulted in a recommendation against award to plaintiff. A no-award recommendation also was made with respect to the next lowest bidder, Gold Key International, Ltd., though in this latter case, the disqualification was for financial reasons. The Government turned next to the Warwick Hotel, the third lowest bidder. Here the on-site inspection proved satisfactory, and a contract award to this organization followed soon afterward.

In the meantime, however, because of the delay caused by the several on-site surveys, the Government found it necessary to postpone the contract award date. To that end, it requested all bidders—plaintiff included—to extend the time for bid acceptance beyond the originally-specified date of November 4, 1984. Plaintiff agreed to this request, though at the time it did so, it was unaware of its adverse pre-award survey and the no-award recommendation.

On February 21, 1985, the Corps formally rejected plaintiff's bid and awarded the contract to the Warwick Hotel. Plaintiff, after several unsuccessful efforts to obtain relief administratively—including a protest of the award to the contracting officer and the submission of a claim for bid costs and lost profits—brought suit in this court.

*Discussion*

█ A contractor who responds to a Government invitation for bids is entitled to fair and honest consideration of its submission. *Keco Industries, Inc. v. United States*, 192 Ct.Cl. 773, 780, 428 F.2d 1233, 1237 (1970); *Heyer Products Co. v. United States*, 135 Ct.Cl. 63, 69, 140 F.Supp. 409,

---

**1.** The deficiencies noted by DCASMA included cosmetic distractions—torn room carpeting, a room with water-spotted ceiling and walls, a second floor hallway that "appeared dirty and unkept [sic] with food crumps [sic] strewn about"—as well as unacceptable sanitary stan-

dards in the kitchen and dining areas—a walk-in cooler temperature in excess of the solicitation-permitted 45°F, food handlers without hair nets, flies and uncovered garbage cans in the kitchen and old food collected in "creases of dining room chairs".

412 (1956). Failure on the Government's part to honor this implied obligation is redressable in this court through either of two avenues. The bidder can obtain injunctive relief under 28 U.S.C. § 1491(a)(3) (1982)—but only if such relief is sought before the contract is awarded—or it can recover bid preparation costs under 28 U.S.C. § 1491(a)(1), pursuant to an implied contract theory. We consider each of these avenues in turn.

■ So far as plaintiff's demand to set aside the contract award is concerned, § 1491(a)(3) permits this court to grant injunctive relief on an implied contract claim only if the claim is "brought before the [underlying] contract is awarded". There is no dispute that suit here was not commenced until months after award of the contract in question. Hence, jurisdiction to entertain plaintiff's demand is plainly lacking.

■ The argument is made, however, that the court should look beyond the actual date on which the complaint was filed and recognize that it was the contracting agency's "belated" announcement of plaintiff's ineligibility for award—that news first came forth on the same day that the contract award was announced—that accounts for plaintiff's late appearance in this court. By not disclosing the adverse survey results prior to the award date, plaintiff argues, the contracting agency was able to foreclose a timely injunction suit here and, in so doing, undermine the legislative purpose expressed in the grant of pre-award injunctive authority to the Claims Court. Plaintiff therefore urges us to "reassert" our equitable power to remedy what it has characterized as a "possible case of denial of due process in the administration of public contracts in a circumstance where the plaintiff should have had the opportunity to protest."

We cannot give this argument any heed. There is no escaping the fact that this court has no power to act where the demand for injunctive relief first surfaces after the challenged award has been made. By narrowly limiting the Claims Court's equitable powers under § 1491(a)(3), Congress has given the district courts exclusive jurisdiction over post-award claims for injunctive relief. And if this statutory scheme allows the Government to structure bid review procedures so as to effectively route claims for equitable relief by disappointed bidders into the district courts, that is a circumstance that only Congress may change.

Precisely the same question was presented in *United States v. John C. Grimberg Co.*, 702 F.2d 1362 (Fed.Cir.1983) (en banc), and there the appellate court answered the point this way:

> The * * * possibility that a contract may be awarded before an implied contract claim can be filed in court cannot be substituted for the constitutional requirement that courts shall exercise only those powers granted by Congress and shall do so only at the times specified by Congress; nor can such a possibility authorize us to expand by fiat that which has been authorized by Congress. [*Id.* at 1373.]

This court clearly has no power to assert injunctive powers that it has not been given by statute.

Turning to the other branch of the case—the claim for bid preparation costs—the contractor raises several factual matters that it contends are evidence of the Government's bad faith dealing. To start with, the contractor challenges the pre-award survey results saying, among other things, that the rooms that were viewed, four in number, represented an inadequate sampling and, in fact, were not part of the hotel's current inventory (meaning, presumably, they were not then available for use). Additionally, it is claimed that the other deficiencies noted were conditions to be expected of any active hotel establishment—and hence, not deficiencies at all—or else were simply *de minimus*.

■ Standing alone, these contentions gain the contractor nothing. For one thing, it appears as an uncontradicted fact on this record that the surveyed rooms were selected by the contractor and were viewed in his presence. It is a bit disingen-

uous, therefore, to say that the rooms that were surveyed were not representative of the hotel's condition as a whole. As to the other points raised, the short answer is that the Government is entitled to define its needs as it sees fit. And, if in so doing, the Government insists upon standards of quality more meticulous than the industry norm, so be it; no law is thereby transgressed, so long as the Government remains even-handed in scrutinizing prospective contractors' compliance with the award specifications. In short, since the deficiencies noted in the survey report did, in fact, reflect conditions that were unacceptable under the criteria called out in the solicitation, there is no more to be said about the matter.

■ The contractor next argues that the observed deficiencies in quality assurance standards were but a make-weight. The real reason for the rejection of its bid, plaintiff argues, is the fact that is noted, but not otherwise explained, in the survey report: that "extreme difficulties were experienced by the government" in plaintiff's prior contract performance. To buttress this point, plaintiff further adds that if indeed the rejection of its bid had been honestly inspired, then the same standards of judgment would also have required rejection of the Warwick Hotel's bid. The physical conditions of the Warwick Hotel, it is argued by way of plaintiff's manager's affidavit, fell well short of the standards judged disqualifying in plaintiff's case.

Although we are not inclined to credit these arguments, neither may we now reject them out of hand. As to the first mentioned point, it seems clear that the survey report failed to say all that it should have in regard to plaintiff's prior contract performance. Federal Acquisition Regulation § 9.106–4(c), 48 C.F.R. § 9.106–4(c) (1986), requires that "[w]hen a preaward survey discloses previous unsatisfactory performance, the surveying activity shall specify the extent to which the prospective contractor plans, or has taken, corrective action." In failing to comply with the regulation, the survey report became vulnerable to precisely the sort of attack the contractor now makes: that the report's omission silently—and deliberately—favored the negative responsibility determination.

■ And contributing to the doubts that must, for the moment, be resolved in the contractor's favor, is the fact that plaintiff was denied the opportunity to substantiate through discovery its affidavit assertions concerning the condition of the Warwick Hotel. The court stayed discovery upon the Government's representation that the case could be resolved on grounds of lack of jurisdiction and failure to state a claim—a circumstance that closer examination shows is no longer true.[2] Plaintiff is entitled to discovery to substantiate, if it can, that the physical conditions and other quality assurance factors prevailing at the Warwick Hotel at the time of the Government's pre-award survey were no better than those judged unacceptable at the La Strada Inn.

■ There remains to be considered one final point—plaintiff's claim for lost profits based on the rooms it alleges it had to set aside (i.e., withhold from availability for future reservation) in order to be able to meet the Government's contemplated needs if the contract were later awarded to it.

This claim was initially presented to the contracting officer pursuant to the Contract Disputes Act of 1978, *as codified in* 41 U.S.C. §§ 601–613 (1982). It was rejected by him on the ground that, between plaintiff and the Corps of Engineers, there existed no contract, express or implied, to which the claim for lost profits could logically be related. The contractor now presents his claim for lost profits to this court.

Preliminarily, this observation is in order: although the Contract Disputes Act is applicable to "any express or implied contract * * * entered into by an executive agency for [*inter alia* ] the procurement of

---

**2.** In fairness to the Government, we should note that the contractor's submissions are hardly models of clarity. It was indeed possible, perhaps even probable, that this lack of clarity contributed to a misunderstanding of the contractor's basic contentions.

services", 41 U.S.C. § 602(a)(2), it has been held that the Act does not embrace the implied contract of fair dealing that arises upon the submission of a prospective contractor's bid. As the Federal Circuit explained in *Coastal Corp. v. United States*, 713 F.2d 728 (Fed.Cir.1983): "That implied contract, which defines the way the government must deal with bids in the process of selecting a contractor, is not a contract for the procurement of goods or services * *." *Id.* at 730. Accordingly, plaintiff's reliance upon the Contract Disputes Act is misplaced.

■ But aside from the incorrect invocation of the Contract Disputes Act, plaintiff's demand for lost profits is off-point on a more basic ground: as a matter of law, the disappointed bidder's right to monetary relief is limited to the recovery of bid preparation costs and related expenses. *McCarty Corp. v. United States*, 204 Ct.Cl. 768, 774, 499 F.2d 633, 637 (1974); *Keco*, 192 Ct.Cl. at 784, 428 F.2d at 1240. Anticipated profits based on a contract that the prospective bidder was not awarded are not available. Put in terms of basic contract doctrine, the law grants damages to the disappointed bidder based on his reliance interest, not his expectation interest. *Restatement (Second) of Contracts* § 344 at 102–03 (1981).

Although there is plainly no basis here for the recovery of lost profits, we stop short of dismissing plaintiff's demand outright, however. That claim, or perhaps some part of it, might survive as an element of plaintiff's bid preparation costs if the room set-aside (the basis of the claim) was contemplated by the terms of the solicitation and was otherwise a necessary action to take to insure against the unavailability of rental space at a later date as gauged by past occupancy rates. But, if these qualifying conditions do not exist, then plaintiff's claim must fail. The set-aside of rooms would then come to nothing more than a voluntary forbearance from pursuing other business opportunities—a choice that every bidder confronts whether in plaintiff's business or some other.

Plaintiff had also asked for an award of attorney's fees and expenses, but has presented neither oral argument nor written authority to support its demand. Hence, that claim warrants no further attention on our part.

## CONCLUSION

For the reasons stated, the court grants defendant's motion for summary judgment on the issue of injunctive relief and orders plaintiff's claim for injunctive relief to be dismissed. The court also grants defendant's motion for summary judgment on plaintiff's claim for lost profits and attorney's fees, but denies the motion as it relates to plaintiff's claim for bid preparation costs (including, for the moment, room set-aside costs).