**ALMAR INDUSTRIES, INC.**

v.

**The UNITED STATES.**

No. 464–87C.

United States Claims Court.

Jan. 31, 1989.

Steven J. Green, Fair Oaks, Cal., for plaintiff.

M. Susan Burnett, Asst. Director, and Joseph A. Kijewski, Washington, D.C., with whom was Asst. Atty. Gen., John R. Bolton, for defendant; Judith R. Robbins, Associate Counsel, Defense Industrial Supply Center, of counsel.

## OPINION

MARGOLIS, Judge.

This contract action against the United States acting through the Defense Logis-

tics Agency (DLA), Defense Industrial Supply Center (DISC), is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, and in the alternative, for summary judgment. The court has carefully examined the entire record and finds that the court does not have jurisdiction to consider the merits of plaintiff's claim. Accordingly, defendant's motion for summary judgment is granted.

## FACTS

Plaintiff, Almar Industries, Inc., is in the business of acquiring parts and components from manufacturers of air, ground and naval weapons systems and resupplying the military with these parts and components as spares. Plaintiff is party to a basic agreement with DISC. Under this basic agreement, plaintiff receives request for quote solicitations from DISC through its SAMMS Automated Small Purchase System, Phase II (SASPS–II). In response to these solicitations, plaintiff is allowed to submit quotations and be awarded purchase orders when it provides the lowest conforming quote.

The SASPS–II program was developed by DISC to ensure that a minimum number of suppliers, predetermined to be qualified bidders, receives each solicitation issued by DISC for spare parts and components. Suppliers in the system receive notice of solicitations directly through the mail from DISC. Inclusion in SASPS–II is not a prerequisite to bidding on DISC solicitations. Non–SASPS–II suppliers may still bid upon these solicitations as general bidders, and their bids are given the same consideration by DISC as those received from SASPS–II suppliers.

On November 30, 1982, plaintiff entered into basic agreement number DLA500–83–H–R334 with DISC. The basic agreement entered plaintiff into the SASPS–II program and sets forth clauses that are applicable to future contracts that are formed when DISC awards a purchase order to the plaintiff. The basic agreement also provides that "the agreement may be terminated in its entirety by either party upon thirty (30) days written notice to the other party...."

Section 9 of the basic agreement, entitled "Certification of Manufacturer's Part Numbered Item," provides:

A. The Contractor, in responding to a SASPS–II solicitation for a manufacturer's part numbered item, and indicating that the item quoted is the "EXACT PRODUCT (Manufacturer Cited in PID [Purchase Item Description])" as distinguished from "EXACT PRODUCT (Other, approved by manufacturer cited in PID)", and "ALTERNATE PRODUCT", shall be deemed to certify that the item quoted, and that the item to be supplied if awarded the purchase order, will be manufactured or supplied by a manufacturer cited in PID. Contractor's failure to furnish, on the Vendor Quotation Card (DLA Form 1233R), the information required by Block 8 thereon, will preclude consideration of any quotation.

B. Any violation of this certification shall be a breach of this agreement (*and of the purchase order, if issued, to which it pertains*). (emphasis added).

A SASPS–II purchase order, number DLA500–84–P–F442, was awarded to the plaintiff by the defendant on April 27, 1984 under the terms of the basic agreement requiring that the plaintiff furnish 2,300 washers, part number (P/N) 701536. The defendant quoted the solicitation based on supplying an "EXACT PRODUCT," manufactured by the manufacturers cited in the PID (United Technologies Corp., Hamilton Standard Division). Seven months after the award, the government requested substantiation that the material offered was in fact provided by United Technologies. By letter dated November 6, 1984, the plaintiff in response to the government's request for substantiation, asked permission to substitute an alternate item manufactured by Spartan Tool & Manufacturing, Inc.

As a result of plaintiff's substitution of United Technologies with Spartan for the DLA500–84–P–F422 solicitation, on July 29, 1985, DISC sent plaintiff thirty days written notice of its intent to terminate the basic agreement. The contracting officer

recommended that DISC withdraw the purchase order from the plaintiff, suspend plaintiff from the SASPS–II automated solicitation and procurement system, place plaintiff's name on the DISC Contractor Review List, and withhold payments on other contracts between plaintiff and defendant. DISC determined that plaintiff frequently violated the provisions of section 9 of the basic agreement. Plaintiff was repeatedly cautioned about its improper bidding practices in correspondence between plaintiff and Commander John J. Paulson of DISC in 1983 and 1984 and was advised that any quote for an item to be furnished by other than the manufacturer cited in the PID on the request for quote must have documented approval.

The basic agreement was terminated by DISC about August 29, 1985. The termination resulted in plaintiff's removal from the SASPS–II program. Although removed from SASPS–II, plaintiff was not barred from bidding on DISC solicitations as a general bidder and was so informed in its notice of termination. As a result of discussions between plaintiff and DISC on August 13, October 4, and November 14 of 1985, plaintiff was restored to SASPS–II in early 1986. The reinstatement was based on plaintiff's assurances of future compliance with all the terms of the basic agreement for participation in SASPS–II.

Following this reinstatement, plaintiff filed a claim for $643,281 with the contracting officer on October 31, 1986. The contracting officer found that DISC's actions in terminating the basic agreement and removing plaintiff's name from the its automated procurement system were proper. The contracting officer determined that if the plaintiff suffered any loss of business as a result of these actions it was entirely attributable to plaintiff's failure to comply with DISC's documentation requirements and failure to candidly reveal its manufacturing sources. Accordingly, the contracting officer denied plaintiff's claim on December 11, 1986.

Plaintiff's complaint alleges that the contracting officer's termination of the basic agreement and the suspension and removal of plaintiff from SASPS–II was a breach of an express contract and a breach of the implied duty of good faith and fair dealing. Plaintiff further alleges that as a result of its suspension from SASPS–II between August 1, 1985 and April 17, 1986 plaintiff experienced a drastic reduction of business and was severely damaged. Plaintiff seeks $643,281 plus interest, costs and attorney's fees.

Defendant asserts that this court lacks jurisdiction to entertain plaintiff's claim because the basic agreement on which it is based is not a contract with the United States over which the Claims Court may exercise jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a). In the alternative, defendant asserts that even if the basic agreement constitutes a contract, its express terms provide for its termination by either party without cause. Defendant also argues that even if DISC's conduct could be construed as a breach of contract, plaintiff cannot recover because it was not damaged by the alleged breach.

## DISCUSSION

### A. *Jurisdiction*

This court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to render judgments on claims for money arising out of a contract with the United States, or out of a statute or regulation requiring, or fairly interpreted to require, the payment of money. *United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). The court has jurisdiction over implied-in-fact contracts with the United States, as well as express contracts.

### 1. *Express Contract Jurisdiction*

Defendant asserts that this court does not have jurisdiction over plaintiff's claim because the basic agreement entered into by the parties is not a contract providing the court with jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a). In support of this assertion, defendant relies on Federal

Acquisition Regulation (FAR) § 16.702(a), which defines a basic agreement as:

> [A] written instrument of understanding, negotiated between an agency or contracting activity and a contractor, that (1) contains contract clauses applying to future contracts between the parties during its term and (2) contemplates separate future contracts that will incorporate by reference or attachment the required and applicable clauses agreed upon in the basic agreement. *A basic agreement is not a contract.*

48 C.F.R. § 16.702(a) (1987) (emphasis added).

The parties have not provided the court with any applicable case law interpreting the jurisdictional implications of FAR § 16.702, and it appears that scant precedent exists on this question. Likewise, the predecessor provision to § 16.702 in the Armed Service Procurement Regulations (ASPR) § 3–410.1, 32 C.F.R. § 3–410.1 (1983), apparently has not been specifically interpreted for jurisdictional purposes in this court.

The regulations dictate that basic agreements do not give rise to contractual obligations with the government. The provisions of the basic agreement in this case, number DLA500–83–H–R334, appear to comport with the FAR mandate that a basic agreement is no more than "a written instrument of understanding ... contain[ing] contract clauses applying to future contracts." FAR § 16.702(a). Under certain circumstances, however, a basic agreement or other such instrument may be transformed into a contract where the definitive elements of a contract are found to be present—mutuality of assent and consideration. *Torncello v. United States,* 231 Ct.Cl. 20, 41, 681 F.2d 756, 768 (1982); *Societe Cotonniere Du Tonkin v. United States,* 145 Ct.Cl. 426, 439, 171 F.Supp. 951, 958 (1959), *cert. denied,* 361 U.S. 965, 80 S.Ct. 594, 4 L.Ed.2d 545 (1960).

In *General Dynamics Corp., Electric Boat Division,* 83–2 B.C.A. ¶ 16,907, 84,116 (1983), the Armed Services Board of Contract Appeals rejected a contractor's argument that the terms of a basic agreement were not enforceable because it lacked valid consideration. The contractor asserted that the Navy had given up nothing in exchange for the agreement and that the government's position that the basic agreement formed part of the consideration for a detail design contract on the Trident submarine and for the award of future contracts was "devoid of any substance." *Id.* at 84,135.

The Board ruled, however, that the contractor's assertion that the basic agreement lacked consideration had "no merit" because the concurrent execution of a detail design contract, which presumably conferred substantial benefits upon the contractor, constituted adequate consideration to permit the Board to enforce the basic agreement. *Id.* at 84,136. The Board went on to rule that ASPR § 3–410.1, the predecessor regulation to FAR § 16.702, which describes a basic agreement as "not a contract, ...simply [did] not apply" under the circumstances of that case. *Id.* at 84,137.

In *Great Falls Terminal Warehouse Co.,* 68–2 B.C.A. ¶ 7138, 33,076 (1968), the Board recognized that a basic agreement, standing alone, cannot form a binding contract conferring jurisdiction on the Board to grant relief to a contractor. The contractor entered into a basic agreement with the Air Force entitling it to receive service order solicitations for the storage of household goods, in much the same way that the basic agreement in this case entitled plaintiff to receive SASPS–II purchase order solicitations. The basic agreement in *Great Falls Terminal* provided that "this Agreement shall not constitute a contractual obligation of the Government or obligate Government funds in any way." *Id.* at 33,077. The Board also noted that ASPR § 3–410.1, applied to the basic agreement in that case.

The Board determined that the dispositive issue before it was whether it had jurisdiction pursuant to an enforceable contract. The Board stated that "[i]n the absence of a valid contract with an operative Disputes clause the Board will take no jurisdiction." *Id.* at 33,079. Noting that the basic agreement on its face disclaimed any

contractual effect and that ASPR § 3-410.1 applied, the Board ruled that "the Basic Agreement by itself is not a contract giving rise to contractual rights and obligations." *Id.* The Board reasoned that additional circumstances evidencing an intent to contract were required to make the provisions of the basic agreement enforceable and stated "only the issuance and acceptance of a service order that gives rise to a contractual obligation and a contract, ... would permit this Board to take jurisdiction." Accordingly, the government's motion to dismiss was granted.

Also, in *Western Pioneer, Inc. v. United States*, 8 Cl.Ct. 291 (1985), the defendant argued that a memorandum of understanding executed between the parties was in fact a basic ordering agreement, which, like a basic agreement, is defined under FAR 16.703(a) as "a written instrument of understanding ... [and] is not a contract." *Id.* at 297. The court ruled, however, that the instrument had "sufficient contractual overtones to qualify as a 'contract' within the ambit of 28 U.S.C. § 1491(a)(3)." *Id.* The court based this conclusion on the fact that the document in question specifically presented and scheduled yearly transportation requirements for petroleum products and that any change in those terms would have to be agreed upon by both the contracting officer and the carriers. Without so stating, the court recognized a mutual exchange of promises that gave rise to an enforceable contract.

■ These precedents clearly indicate that facts and circumstances independent of a basic agreement itself, may form an enforceable contract or transform the basic agreement into a binding obligation. The court finds, however, that such circumstances are wanting in this case. The plaintiff contends that the basic agreement at issue here is supported by consideration because both parties received benefits from the agreement. Plaintiff asserts that the government received a substantial benefit in having rapid access to a pool of pre-qualified bidders and that SASPS-II companies benefitted by obtaining request for quotes directly in the mail, which because of the

rapid turnaround time for SASPS-II bids, all but eliminates outside competition. In this regard, plaintiff maintains that suspension from the SASPS-II was in essence a *de facto* debarment. The defendant denies that plaintiff was precluded from bidding on SASPS-II solicitations, both as a matter of law and as a practical matter.

Plaintiff's bald assertions concerning the competitive advantages realized by SASPS-II suppliers are not borne out by the record before this court. Plaintiff has failed to submit any evidence substantiating its contention that outside bidders are virtually excluded from the solicitation process by the rapid turnaround available to SASPS-II bidders. The defendant, however, submitted the affidavit of Richard J. Hoffman, the Deputy Director of DISC's Directorate of Contracting and Production. Hoffman authored the basic agreement which is the focal point of this case. He stated that plaintiff's assertion that it was virtually excluded from DISC solicitations as a result of its suspension from the SASPS-II program was "fallacious" and "incorrect." Hoffman stated that "the preponderant number of quotations received at DISC are from unsolicited sources, which the plaintiff terms 'non-SASPS II sources.'" The court accepts Hoffman's statement concerning the ability of non-SASPS-II suppliers to bid on DISC contracts on its face as plaintiff has failed to offer any support, other than unsubstantiated allegations, for the proposition that suspension from SASPS-II was a *de facto* debarment.

Plaintiff has failed to establish that it received sufficient benefit from participating in the SASPS-II program to provide consideration to transform the basic agreement into an enforceable contract. Moreover, there is no evidence of any mutuality of intent or "meeting of the minds" between the parties tending to show that a contract exists in the manner urged by the plaintiff. The regulations on this point are clear—a basic agreement is not an enforceable contract. Accordingly, absent any facts or circumstances demonstrating otherwise, this court does not have jurisdiction

to render judgment on an express contract, as none exists between the parties.

### 2. Implied-in-Fact Contract Jurisdiction

■ In addition to invoking the jurisdiction of this court based on an alleged contract formed by the basic agreement, the plaintiff also alleges that the defendant violated its duty of good faith and fair dealing in conducting its procurement activities. Cases involving the breach of the government's implied duty to act in good faith and fairly deal with prospective contractors are within the contractual jurisdiction of this court under the Tucker Act. In *Tidewater Management Services, Inc. v United States*, 216 Ct.Cl. 69, 72, 573 F.2d 65, 67 (1978), the Court of Claims stated that "this court has long recognized its jurisdiction ... based on implied contract which obligates the Government to deal lawfully and in good faith with those who respond to its requests for bids and proposals."

The Claims Court's jurisdiction to provide relief for violations of the government's implied duty of good faith and fair dealing arises from the court's authority under section 1491(a)(3) over "contract claim[s] brought before the contract is awarded." As then Chief Judge Kozinski noted in *Ingersoll–Rand Co. v. United States*, 2 Cl.Ct. 373, 375 (1983), this section refers to two entirely different contracts. The first contract referred to in section 1491(a)(3) is the implied-in-fact contract between bidders and the government for the fair and honest consideration of the proposal on the underlying contract. The second contract mentioned is the contract that is the subject of the proposed award—the contract for goods and services. At the pre-award stage, this second contract is not yet in existence and cannot, therefore, provide a basis for the exercise of jurisdiction. *See United States v. John C. Grimberg Co., Inc.*, 702 F.2d 1362, 1367, n. 8 (Fed.Cir. 1983) (en banc).

It is the implied-in-fact contract that provides the jurisdictional basis for the authority to grant relief for violations of the duty of good faith and fair dealing. This con-

tract arises from the bid solicitation process and ensures that a bid submitted in conformity with the requirements of the solicitation will be fully and fairly considered. *Keco Industries, Inc. v. United States*, 192 Ct.Cl. 773, 778, 428 F.2d 1233, 1237 (1970). In order to give rise to this implied-in-fact contract, there must be a solicitation, and an underlying contract for goods and services. Jurisdiction to consider allegations of bad faith and unfair dealing does not, therefore, attach outside the context of a solicitation to which a conforming bid was submitted.

■ Under the facts of this case, the plaintiff cannot invoke the jurisdiction of this court based on allegations that the government violated its duty of good faith and fair dealing. The plaintiff has not shown that it submitted a conforming bid, or quote in this case, to the government in response to a solicitation, or request for quotes, that was not fully and fairly considered. This case does not arise within the context of a wrongful denial of a purchase order for which the plaintiff actually submitted a bid and, as previously discussed, plaintiff was not precluded from submitting bids to DISC, as a matter of law or as a practical matter. Plaintiff has not shown that DISC refused to consider its bids, and on the record before the court, it does not appear as though plaintiff actually submitted any during the period of the suspension although it was aware that it could, as indicated in the notice of suspension issued by the contracting officer on July 29, 1985. Accordingly, plaintiff cannot invoke the jurisdiction of this court based on an implied-in-fact contract with the government.

### CONCLUSION

Plaintiff has failed to show that the facts and circumstances surrounding the existence of the basic agreement between the parties constituted an express contract. Nor has plaintiff established that the government violated the duty of good faith and fair dealing under an implied-in-fact contract. Plaintiff has not shown that a statute or regulation mandates the pay-

ment of money by the government under the circumstances of this case. This court does not, therefore, have jurisdiction under the Tucker Act to consider the merits of plaintiff's claim.* The defendant's motion for summary judgment is granted, and the Clerk will dismiss the complaint. Each party will bear its own costs.

---

* The court notes, however, that the basic agreement at issue here explicitly provides that it may be terminated at will by either party upon thirty days written notice. It appears unlikely, therefore, that the plaintiff could prevail on the merits even if the court exercised jurisdiction over the claim.