**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, American Federation of Government Employees, local 1482, William J. Gately and Michelle Jo Evans, Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 00–5090.**

United States Court of Appeals, Federal Circuit.

DECIDED: July 23, 2001.

Martin R. Cohen, of Bala Cynwyd, PA, argued for plaintiffs-appellants.

Mark L. Josephs, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David M. Cohen, Director; and James M. Kinsella, Deputy Director.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

The American Federation of Government Employees, AFL–CIO, the American Federation of Government Employees, Local 1482, William J. Gately, and Michelle Jo Evans (collectively, "Appellants") appeal the decision of the United States Court of Federal Claims that dismissed their complaint for lack of standing. *Am. Fed'n Gov't Employees, AFL–CIO v. United States*, 46 Fed. Cl. 586 (2000) ("*AFGE*"). The court determined that Appellants lack standing to challenge a cost comparison analysis of the Defense Logistics Agency ("DLA") because their interests do not come within the zone of interests protected by either the Federal Activities Inventory Reform Act ("FAIR"), P.L. No. 105–270, 112 Stat. 2382 (1998), *re-*

*printed in* 31 U.S.C. § 501 (Historical and Statutory Notes), or 10 U.S.C. § 2462 (1994). Because we determine that Appellants lack standing under 28 U.S.C. § 1491(b)(1), we affirm the decision of the Court of Federal Claims, but on a different ground.

## BACKGROUND

### I.

The FAIR requires executive agencies to identify the activities they perform that are not "inherently governmental functions." FAIR, § 2(a). Each year, the head of each agency must submit a list to the Office of Management and Budget ("OMB") of all such activities (a "FAIR list"). *Id.* The FAIR also requires that when an agency considers contracting with a private sector source for the performance of such an activity, it must select the source using a competitive process that includes a "realistic and fair" cost comparison analysis. *Id.* § 2(d), (e). The FAIR provides that certain parties, including employees of an organization within an executive agency that is performing or that might perform the activity, as well as labor organizations that include such employees in their membership, may bring an administrative challenge to the "omission of [the] particular activity from, or [the] inclusion of [the] particular activity on, a [FAIR] list." *Id.* § 3(a), (b).

Since a date prior to the enactment of the FAIR, OMB Circular No. A–76 ("OMB A–76") has governed the performance of commercial activities by executive agencies. OMB A–76 reflects the view that "the [g]overnment should not compete

with its citizens" and that "it has been and continues to be the general policy of the [g]overnment to rely on commercial sources to supply the products and services the [g]overnment needs." OMB A–76 provides that "the [g]overnment shall not start or carry on any activity to provide a commercial product or service if the product or service can be procured more economically from a commercial source." OMB A–76 requires agencies to perform cost comparison analyses to determine whether a commercial product or service should be provided by the agency or by a private sector source. In performing a cost comparison analysis, the agency is to compare the bid of the private sector source with the cost of providing the good or service with government facilities and personnel (the agency's "Most Efficient Organization" or "MEO").[1] OMB A–76 provides for the administrative review of cost comparison decisions, and permits federal employees who would be affected by the decision, as well as their representatives, to seek such review. The provisions of OMB A–76 are consistent with the FAIR and OMB A–76 has remained in effect since enactment of the FAIR.

### II.

On April 30, 1999, the DLA issued a solicitation for bids for the performance of defense material distribution services ("depot services") at the Defense Distribution Depot in Barstow, California. The solicitation was issued in support of a cost comparison study conducted under OMB A–76. The cost comparison study was designed to determine whether the depot services could be performed more economically by a private sector source or by the DLA's MEO.

---

1. The MEO is not necessarily an existing organization, "but is the organization the agency would establish if it were competing for the work." *AFGE*, 46 Fed. Cl. at 588 n. 1.

The DLA determined that EG&G Logistics, Inc. ("EG&G") won the competition among private sector sources because EG&G had submitted the lowest-priced, technically acceptable proposal. Accordingly, the DLA proceeded to compare EG&G's bid to that of the MEO. While this comparison process was pending, Congress enacted the FAIR. Pursuant to the FAIR, the DLA listed the depot services on its FAIR list.[2]

On January 5, 2000, the DLA determined that EG&G's bid was about $2.5 million lower than the MEO's; accordingly, the DLA tentatively decided to contract out the depot services to EG&G. Appellants William J. Gately and Michelle Jo Evans are federal employees who allege that they will be part of the MEO if the depot services are performed by the DLA but will be displaced if the depot services are contracted out to EG&G. The union appellants represent Mr. Gately and Ms. Evans and other similarly situated federal employees. Pursuant to OMB A–76, Appellants and EG&G submitted administrative appeals of the cost comparison decision to the DLA Appeal Authority. As a result of these appeals, the cost comparison was recalculated, but EG&G's bid remained lower than that of the MEO by about $2.2 million. Accordingly, the Appeal Authority upheld the tentative decision to award the contract to EG&G.

## III.

Appellants filed suit in the Court of Federal Claims to challenge the Appeal Authority's decision. Appellants argued that the DLA had failed to conduct a proper price comparison as required by OMB A–76, by § 2(e) of the FAIR, and by 10 U.S.C. § 2462(b).[3] The government moved to dismiss the complaint, arguing that Appellants do not have standing to challenge the cost comparison decision in the Court of Federal Claims.

The court considered whether Appellants have standing under 28 U.S.C. § 1491(b)(1), which gives the Court of Federal Claims jurisdiction over bid protest cases. *AFGE*, 46 Fed. Cl. at 591. The relevant language in that statute provides that the court has "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (Supp. V 1999). Because the statute does not define an "interested party," the court looked to its legislative history to determine whether Congress intended the term to include federal employees such as Appellants. *AFGE*, 46 Fed. Cl. at 592–97.

The court noted that, prior to the enactment of § 1491(b)(1), the Court of Federal Claims had jurisdiction over only pre-award bid protest cases, while federal district courts had jurisdiction over post-award bid protest cases. *Id.* at 592–93. The court determined that the prior jurisdiction of the Court of Federal Claims was based on 28 U.S.C. § 1491(a) and, there-

---

**2.** It does not appear from the record that Appellants challenged the inclusion of the depot services on the DLA's FAIR list.

**3.** 10 U.S.C. § 2462 requires the Department of Defense to obtain certain supplies and ser-
vices from the private sector if a cost comparison analysis indicates that a private source can provide the supply or service at a lower cost.

1298

fore, was limited to claims " 'founded upon ... any express or implied contract.' " *Id.* at 593 (quoting 28 U.S.C. § 1491(a) (1994)). Thus, "[d]isappointed bidders were the only parties who had standing to bring a bid protest" in the Court of Federal Claims. *Id.* The court determined that the prior jurisdiction of the district courts was based on the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702-706. *Id.* (citing *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970) (holding that a disappointed bidder could challenge the award of a government contract in a district court pursuant to the APA)). The court noted that standing under the APA is governed by 5 U.S.C. § 702, which confers standing on " 'a person ... adversely affected or aggrieved by agency action within the meaning of a relevant statute.' " *Id.* (quoting 5 U.S.C. § 702 (1994)). The court stated that "[t]he requirements for establishing standing under the APA are well settled. Claimants ... must demonstrate that: (1) they have suffered sufficient 'injury-in-fact;' (2) that the injury is 'fairly traceable' to the agency's decision and is 'likely to be redressed by a favorable decision;' and (3) that the interests sought to be protected are 'arguably within the zone of interests to be protected or regulated by the statute ... in question.' " *Id.* at 595 (quoting *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) (third alteration in original)).

The court determined that one purpose behind § 1491(b)(1) was to give the Court of Federal Claims and the district courts concurrent jurisdiction over all bid protest cases, so that "both courts [could] hear 'the full range of cases previously subject to review in either system.' " *Id.* at 593 (quoting 142 Cong. Rec. S11849 (daily ed.

Sept. 30, 1996) (statement of Sen. Levin)). The court therefore reasoned that "interested parties" in § 1491(b)(1) should be interpreted as including everyone "who had standing in either court under each forum's [prior] jurisdiction over bid protest cases." *Id.* at 593, 595. Thus, although Appellants would not have had standing under § 1491(a), the court reasoned that they might have standing under § 1491(b)(1) if they "would have had standing in [a] federal district court under the APA." *Id.* at 595.

The court proceeded to apply to the Appellants the three-part test for standing under the APA. The court did not decide whether Appellants meet the "injury-in-fact" or "traceability" prongs because it determined that they are not within the zone of interests that either the FAIR or 10 U.S.C. § 2462 are designed to protect. *Id.* at 597–600. The court concluded that Appellants "cannot establish standing under the APA and therefore are not 'interested parties' " under § 1491(b)(1). *Id.* at 600. The court therefore granted the government's motion to dismiss Appellants' complaint for lack of standing.

Appellants appeal the dismissal to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (1994).

## DISCUSSION

■ "Whether a party has standing to sue is a question that this court reviews *de novo*." *Prima Tek II, L.L.C. v. A–Roo Co.*, 222 F.3d 1372, 1376 (Fed.Cir.2000). The precise question presented by this appeal, whether federal employees or their union representatives have standing to challenge an executive agency cost comparison decision in the Court of Federal Claims, is one of first impression.

Our analysis begins with the language of the statute on which the jurisdiction of the Court of Federal Claims is based:

(b)(1) Both the Unites [sic] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

(2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

(3) In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.

(4) In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.

28 U.S.C. § 1491(b). As recognized by the parties and by the Court of Federal Claims, the statute confers standing on "an interested party objecting to a solicitation by a Federal agency," but does not further define who is encompassed by the term "interested party."

Appellants argue that the term should be construed according to its ordinary dictionary definition, and that they are "interested parties" because they stand to lose their jobs if the depot services are contracted out to EG&G. Alternatively, Appellants argue that "interested party" should be interpreted as encompassing parties who satisfy the APA requirements for standing, and that they satisfy those requirements because they fall within the zone of interests protected by OMB A-76 and the FAIR.[4]

The government argues that "interested party" should be construed in accordance with a related statute, the Competition in Contracting Act ("CICA"), 31 U.S.C. §§ 3551–56. The CICA governs the bid protest jurisdiction of the General Accounting Office ("GAO"), and defines the term "interested party" as follows:

The term "interested party", with respect to a contract or a solicitation or other request for offers .... means an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract.

31 U.S.C. § 3551(2) (Supp. IV 1998).

■ Because the plain language of the statute does not resolve this issue, we look to the legislative history of § 1491(b)(1) for an indication of congressional intent. *See, e.g., Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). The statute was enacted as part of the Administrative Disputes Resolution Act of 1996 ("ADRA"), P.L. No. 104–320, 110

4. Although the Court of Federal Claims' decision primarily addresses whether appellants are within the zone of interests of the FAIR, Appellants' arguments focus on whether they are within the zone of interests of OMB A–76.

Stat. 3870 (1996). Senator Cohen, who offered the bid protest provision at issue as an amendment to the pending ADRA legislation, described the provision as "expand[ing] the bid protest jurisdiction of the Court of Federal Claims." 142 Cong. Rec. S11848 (daily ed. Sept. 30, 1996) (statement of Sen. Cohen). He explained that, without the legislation, the court only had jurisdiction over pre-award bid protests and that the bill would give the court "both pre and post-award jurisdiction." *Id.* He noted that *Scanwell* "held that a contractor can challenge a Federal contract award in Federal district court under the [APA]," and described problems he saw with the concurrent jurisdiction of the Court of Federal Claims and district courts over bid protests. *Id.* He explained that the bid protest provision included a sunset clause which would repeal the "district courts' *Scanwell* jurisdiction." *Id.* Senator Levin, who, together with Senator Grassley, had introduced the ADRA legislation, commented on the problems of concurrent jurisdiction over bid protests, and remarked that the Acquisition Law Advisory Panel had recommended that there should be only one forum for bid protests. *Id.* at S11849 (statement of Sen. Levin). He described the bid protest provision of the ADRA as "consolidat[ing] the jurisdiction of the Court of Federal Claims and the district courts," such that before the sunset provision took effect, "[e]ach court system would exercise jurisdiction over the full range of bid protest cases previously subject to review in either system." *Id.* Then, after the sunset provision took effect, "the jurisdiction of the district courts would terminate, and the Court of Federal Claims would exercise exclusive judicial jurisdiction over procurement protests." *Id.* at S11849–50. *See also* H.R. Conf.

Rep. No. 104–841, at 10 (1996) ("It is the intention . . . to give the Court of Federal Claims exclusive jurisdiction over the full range of procurement protest cases previously subject to review in the federal district courts and the Court of Federal Claims.").

This legislative history indicates that Congress intended to confer on the Court of Federal Claims jurisdiction previously exercised only by district courts under *Scanwell.* The question is what Congress meant when it referred to "*Scanwell* jurisdiction." As discussed above, prior to the ADRA, the Court of Federal Claims had jurisdiction over only pre-award protests, while, under *Scanwell,* the district courts had jurisdiction over post-award protests. The ADRA gave the Court of Federal Claims jurisdiction over post-award protests. Thus, the ADRA clearly conferred the Court of Federal Claims with "*Scanwell* jurisdiction" inasmuch as it permitted the Court of Federal Claims to hear post-award protests. Moreover, while pre-ADRA protests brought in the Court of Federal Claims were governed by a narrow standard of review, *see Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1203–04 (1974), the ADRA expressly made the APA standard of review applicable to all bid protest actions, 28 U.S.C. § 1491(b)(4). *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1331–33 (Fed.Cir.2001).

The issue presented by this appeal, however, is whether Congress intended to expand the class of parties who can bring bid protest actions in the Court of Federal Claims.[5] On the one hand, Congress could have intended the Court of

---

**5.** *Impresa* presented the issue of whether a

bidder who had been eliminated by the con-

Federal Claims' *"Scanwell* jurisdiction" to encompass complaints brought by disappointed bidders only. The vast majority of cases brought pursuant to *Scanwell* were brought by disappointed bidders. *Scanwell* itself involved a disappointed bidder, and the Court of Appeals for the D.C. Circuit has characterized *Scanwell* as holding "that a disappointed bidder on a government contract was a person aggrieved under the APA and had standing to seek a limited review of the contract award." *Int'l Eng'g Co. v. Richardson,* 512 F.2d 573, 579 (D.C.Cir.1975). *See also Free Air Corp. v. FCC,* 130 F.3d 447, 450 (D.C.Cir. 1997) (describing *Scanwell* and other cases as holding that "sufficiently viable runners-up in a procurement process have standing to allege that an illegality in the process caused the contract to go to someone else"). This court also has described *Scanwell* standing narrowly. *Southfork Sys., Inc. v. United States,* 141 F.3d 1124 (Fed.Cir.1998) ("The essence of 'the *Scanwell* doctrine,' which Congress intended 28 U.S.C. § 1491(a)(3) to make applicable to the Claims Court, is that an unsuccessful bidder has standing to challenge a proposed contract award...."). Thus, in conferring the Court of Federal Claims with *"Scanwell* jurisdiction," Congress may have intended the court to exercise jurisdiction over disputes brought by disappointed bidders only.

On the other hand, because *Scanwell* itself is based on the APA, Congress could

have intended to give the Court of Federal Claims jurisdiction over any contract dispute that could be brought under the APA. Because the language of 5 U.S.C. § 702 is quite broad,[6] parties other than actual or prospective bidders might be able to bring suit. *See, e.g., Ballerina Pen Co. v. Kunzig,* 433 F.2d 1204 (D.C.Cir.1970) (determining that an incumbent contractor had standing to challenge an agency's award of a contract to the National Industries for the Blind under the APA even though it was not a disappointed bidder because the agency had not awarded the contract through the traditional bid system).

In resolving this issue, we are guided by the principle that waivers of sovereign immunity, such as that set forth in § 1491(b)(1), are to be construed narrowly. *See, e.g., McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951) ("[S]tatutes which waive immunity of the United States from suit are to be construed strictly in favor of the sovereign."). With that principle in mind, we interpret the references in the legislative history to the *"Scanwell* jurisdiction" of the district courts as references to the district courts% jurisdiction over bid protest cases brought under the APA by disappointed bidders, like the plaintiff in *Scanwell.* This interpretation is supported by the legislative history of the ADRA, which describes *Scanwell* as permitting "a *contractor* to challenge a Federal contract award." 142

---

tracting officer from the competitive range of bids due to unacceptable technical proposals had standing to bring a bid protest action under the current version of § 1491(b)(1). *Impresa,* 238 F.3d at 1333–34. In deciding that issue, we stated that we were not required to "resolve whether the 1996 amendments [to the statute] have liberalized the standing requirements by adopting the APA standard," because we determined that the bidder had "an economic interest" in the contract award and, therefore, satisfied even

"the more stringent ... standard" of the CICA. *Id.* at 1335. *Impresa* therefore did not resolve the question before us today.

6. The relevant part of the statute provides, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

Cong. Rec. S11848 (statement of Sen. Cohen) (emphasis added). It also is supported by the narrow reading courts have given standing under *Scanwell*, as discussed above. When construed in this manner, the legislative history of § 1491(b)(1) suggests that Congress intended standing under the statute to be limited to disappointed bidders.

The language chosen by Congress, while not unambiguous, supports this construction. When defining standing under § 1491(b)(1), Congress did not use the broad language of the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," 5 U.S.C. § 702. In addition, Congress did not explicitly invoke the APA standing requirements, although it did explicitly invoke the APA standard of review. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). We therefore are not convinced that Congress, when using the term "interested party" to define those who can bring suit under § 1491(b)(1), intended to confer standing on anyone who might have standing under the APA.

The term Congress did choose to define standing under § 1491(b), "interested party," is a term that is used in another statute that applies to government contract disputes, the CICA. As set forth above, the CICA explicitly defines that term as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2). Section 3551, by its own terms, applies only to contract disputes decided by the Comptroller General of the GAO pursuant to 31 U.S.C.

§§ 3551–56. However, the fact that Congress used the same term in § 1491(b) as it did in the CICA suggests that Congress intended the same standing requirements that apply to protests brought under the CICA to apply to actions brought under § 1491(b)(1). We therefore construe the term "interested party" in § 1491(b)(1) in accordance with the CICA, and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract. This construction is consistent with the legislative history of § 1491(b)(1), which, as discussed above, indicates that Congress intended to extend the jurisdiction of the Court of Federal Claims to include post-award bid protest cases brought under the APA by disappointed bidders, such as the plaintiff in *Scanwell*.

█ Because Appellants here are not actual or prospective bidders or offerors, they do not have standing to challenge the DLA's cost comparison analysis or its decision to award the depot services contract to EG&G.

## CONCLUSION

For the foregoing reasons, the order of the Court of Federal Claims dismissing Appellants' claim for lack of standing is

*AFFIRMED.*

## COSTS

Each party shall bear its own costs.