**GENTEX CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 03–728C.**

United States Court of Federal Claims.

Filed Under Seal June 10, 2004.

Reissued: June 18, 2004.[1]

---

1. This opinion was issued under seal on June 10, 2004. The Court invited the parties to submit proposed redactions by June 15, 2004. No redactions having been received, the Court publishes this opinion *in toto*, correcting errata.

Frederick W. Claybrook, Jr., Crowell & Moring, Washington, D.C., for Plaintiff.

Gerald Mark Alexander, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant. Bryan O'Boyle, and Clarence Long, III, Air Force Legal Service Agency, Of Counsel.

## MEMORANDUM OPINION GRANTING DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING BID PREPARATION AND PROPOSAL COSTS

WILLIAMS, Judge.

This post-award bid protest comes before the Court on the parties' cross-motions for partial summary judgment regarding Plaintiff's bid preparation and proposal costs. On December 3, 2003, the Court granted Plaintiff's protest, finding that the Air Force had improperly evaluated the awardee's noncompliant solution as an advantage, allowing the awardee to "trade off" its noncompliance for lowered cost, while Gentex was not informed that this could be done. Although the Court found a prejudicial violation of procurement regulation and unequal treatment of offerors,

the Court denied Plaintiff's request for injunctive relief, finding that national security considerations dictated that the contract performance continue. As a remedy for the violation, the Court awarded Plaintiff its bid preparation and proposal (B & P) costs in an amount to be determined in further proceedings. *Gentex v. United States*, 58 Fed.Cl. 634, 636 (2003).

On May 7, 2004, the parties submitted cross-motions for partial summary judgment on two discrete legal issues: (1) whether Plaintiff may recover the B & P costs incurred by its teammates; and (2) whether profit can be included in the B & P costs.[2] Because Plaintiff is not obligated to pay its teammates' bid preparation and proposal costs and has not itself incurred those costs, it cannot recover them in this action. Nor can Gentex recover profit on its B & P effort. B & P costs are a type of reliance damages intended to reimburse an offeror for the costs or expenses wasted in preparing an offer which was not fairly considered. Profit is not an element of those costs. As such, Plaintiff's Motion for Partial Summary Judgment is denied; Defendant's Motion is granted.

### *Background*[3]

Pursuant to the Court's order of December 3, 2003, Gentex Corporation ("Gentex") submitted to the United States a statement of bid preparation and proposal ("B & P") costs relating to the Joint Service Aircrew Mask ("JSAM") procurement under Request for Proposals ("RFP") F41624–02–R–1007 for System Development and Demonstration ("SDD").

Gentex's B & P statement included B & P costs of its team members on this procurement, i.e. $214,837 incurred by ILC Dover and $33,641 incurred by Calspan–UB Research Center ("CUBRC") with respect to proposal efforts for the JSAM SDD RFP.

---

**2.** The parties believe they will be able to resolve the remaining B & P costs attributable to Gentex's own proposal effort.

**3.** This background is derived from the parties' stipulation and the Administrative Record (AR) in the underlying protest. Joint Proposed Findings of Uncontroverted Facts filed on April 30, 2004.

Gentex's B & P statement also included a claim for 15 percent profit in the amount of $306,031.

*Teaming Arrangements*

*SDD RFP Synopsis*

The May 31, 2002, SDD RFP synopsis indicated that offerors would address JSAM teaming or partnering arrangements in the SDD proposals:

> Teaming or partnering within industry allows for the most promising technical design and expertise. Please indicate how teaming or partnering will be considered in your approach.

*SDD RFP Provisions*

Clause YA–H007 "Teaming Arrangement" provided that offerors' JSAM SDD proposals identify "team members."

> (e) The following subcontractors were evaluated during source selection and are considered to be team members.

Section L 4.2.1 of the SDD RFP requested that offerors address "PDRR Team Effort."

Section L 5.1, "Organizational Structure," requested that the offerors "[d]escribe the organizational structure of the team assigned to the proposed effort, including interfaces with other company divisions, associate contractors, and the Government, and how this structure would contribute to a synergistic environment that will be effective in this program."

Section M of the RFP stated that "PDRR Team Effort" would be an evaluation subfactor for the JSAM SDD competition.

*Gentex's Proposal*

The Executive Summary of Gentex's Initial SDD proposal addressed the Gentex Team

> The GENTEX Team has held a leadership role in aircrew safety and protection for over fifty years.

> \*     \*     \*     \*     \*     \*

> Our Team: GENTEX Corporation, ILC Dover, Crew Systems Corporation (CSC) and CUBRC–Veridian, possess a unique

blend of capabilities to successfully accomplish the JSAM Program.

AR Vol. 7, Tab B1.2, at 00003469.

The Executive Summary of Gentex's Initial SDD proposal described the "Organizational Structure" with a "GENTEX Team Overview" identifying ILC Dover and CUBRC–Veridian as part of the "GENTEX Team." AR Vol. 7, Tab B1.2, at 00003474–75.

Gentex's Initial SDD proposal described the operation of the Gentex Team, including fee sharing:

> The GENTEX Team will operate as a single synergetic team, with product-based Integrated Product Teams (IPTs) charged with responsibility for developing and delivering the major JSAM system products. The Program Manager will implement an integrated management approach to direct and control the efforts of the GENTEX Team. All team members have committed to this single management system and have co-signed a common set of operating guidelines captured in the "Team Operations" process description in the Integrated Master Plan (IMP). **To underscore their full commitment to JSAM, the teammates have agreed to a sharing plan for all earned award fees**. [emphasis in original]

AR Vol. 7, Tab B1.2, at 0003475.

Volume IV of Gentex's Initial SDD proposal identified ILC Dover and CUBRC–Veridan as part of the "GENTEX JSAM Team Organization." AR Vol. 8, Tab B1.2, at 00004001.

In Clause YA–H007 "Teaming Arrangements," Gentex's proposal included the following entry:

> (e) The following subcontractors were evaluated during source selection and are considered to be team members. ILC Dover, Inc., Crew Systems Corporation, Calspan–University at Buffalo Research Center, Inc.

AR Vol. 8, Tab B1.2, at 00004298.

Gentex and ILC Dover entered into a teaming agreement for the JSAM program. The teaming agreement stated, in part, that the team members would provide support for proposal effort and "Each party shall bear its

own costs during the proposal stage in support of winning the program."

Gentex and CUBRC entered into a teaming agreement for the JSAM program. The teaming agreement provided for joint proposal effort and stated, in part: "Both CUBRC and GENTEX intend to expend a great deal of effort at their own expense with a view toward developing the best approach to the proposal."

### DCAA Audit

In Audit Report No. 04901–2004D10790001 dated March 22, 2004, the Defense Contract Audit Agency ("DCAA") questioned the entire $214,837 for ILC Dover costs:

> Although ILC Dover incurred JSAM B & P costs, we question the entire $214,837 included in this submission as Gentex did not incur any expense related to ILC Dover B & P costs and has no obligation to reimburse ILC Dover for any B & P costs. In fact, the teaming agreement between Gentex and ILC Dover states "each party shall bear its own costs during the proposal stage in support of winning the program."

Audit Report at 13–14.

In this report, DCAA questioned the entire $33,641 for CUBRC costs:

> Although CUBRC incurred JSAM B & P costs, we questioned the entire $33,641 included in this submission as Gentex did not incur any expense related to CUBRC B & P costs and has no obligation to reimburse CUBRC for any B & P costs. In fact, the teaming agreement between Gentex and CUBRC states, "Both CUBRC and Gentex intend to expend a great deal of effort at their own expense with a view toward developing the best approach to the proposal."

Id. at 14.

In this report, DCAA questioned the entire amount of profit of $306,031:

> We question the entire $306,031 of the fee included on the contractor's statement of B & P costs. Fee is not considered a cost.

Id. at 16.

### Payment of Teammate Costs

██ Pursuant to the terms of their teaming agreement, Gentex is not presently required to reimburse ILC Dover for any of ILC Dover's B & P costs. In the event that the Court finds that Gentex is entitled to recover the requested $214,837 (or any part thereof) in B & P costs incurred by ILC Dover, however, Gentex has agreed with ILC Dover that Gentex will pay the full amount of its recovery to ILC Dover.

Pursuant to the terms of their teaming agreement, Gentex is not presently required to reimburse CUBRC for any of CUBRC's B & P costs. In the event that the Court finds that Gentex is entitled to recover the requested $33,641 (or any part thereof) in B & P costs incurred by CUBRC, however, Gentex has agreed with CUBRC the Gentex will pay the full amount of its recovery to CUBRC.

### Discussion

### Gentex May Not Recover Bid Preparation and Proposal Costs on Behalf of its Teammates

Defendant contends that Gentex may not recover B & P costs on behalf of its teammates because Gentex has no obligation to pay its teammates those costs and Gentex has not itself incurred their B & P costs. The Court agrees.

In essence, this issue is one of standing. It is well established that the standing doctrine embraces the general prohibition against a litigant's raising another person's legal rights. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In the context of a bid protest, this Court's authorizing legislation confers standing on "an interested party objecting to the solicitation by a Federal Agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract ...." 28 U.S.C. 1491(b)(1); *American Federation of Government Employees v. United States,* 258 F.3d 1294, 1299 (Fed.Cir.2001). Although the Tucker Act does not define the term "interested party," the Federal Circuit has applied the Competition In Contracting Act's (CICA) definition of an "interested party" to the Tucker Act's jurisdictional grant. 31 U.S.C. § 3551(2); *American Federation of*

*Government Employees,* 258 F.3d at 1302. CICA defines an interested party as " 'an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract.' " *Id.* In *Myers Investigative and Security Services, Inc. v. United States,* 275 F.3d 1366 (Fed.Cir.2002), the Federal Circuit applied that definition and stated further that a party must have a "substantial chance" of award in order to be considered an "interested party" under the Tucker Act. *Myers,* 275 F.3d at 1370; *accord Information Technology & Applications Corp. v. United States,* 316 F.3d 1312, 1319 (Fed.Cir.2003) ("prejudice (or injury) is a necessary element of standing.")

Applying the CICA definition of interested party, GAO denied a protester recovery of proposal preparation costs incurred by its teammates absent evidence of an obligation by the protester to repay such costs regardless of whether or not they would be recovered from the Government. *Sodexho Management, Inc.—Costs,* B–289605.3, 2003 CPD ¶ 136, 2003 WL 21910567 (Aug. 6, 2003). GAO explained:

> As defined in 31 U.S.C. § 3551(2), an "interested party" is an "actual or prospective bidder or offeror." Under this definition, the interested party is the protester, not its potential subcontractor, even if it participates in preparing the protester's proposal. Accordingly, only if there is evidence of an obligation by the protester to repay the subcontractor for its proposal preparation costs regardless of whether the protester ultimately recovers those costs from the government can we conclude that those costs are those of an interested party as required by CICA.

*Id.* at *14; *see also Boines Constr. & Equip. Co., Inc.—Costs,* B–279575.4, Apr. 5, 2000, 2000 CPD ¶ 56 at 4–5, 2000 WL 361647 (April 5, 2000).

GAO's rationale is persuasive. Although ILC Dover and CUBRC were teammates of Gentex in this procurement and participated in the proposal effort, they were not themselves offerors, only Gentex was.[4] Gentex has not alleged that it formed a joint venture with ILC Dover and CUBRC, and the record does not support such a conclusion. Rather, ILC Dover and CUBRC are referred to as subcontractors as well as teammates in the proposal and evaluation, and Gentex is not obligated to pay them their B & P costs.

Where, as here, a teaming agreement or subcontract "expressly negates any liability of the prime contractor to the subcontractor," the prime may not recover those costs. *Donovan Constr. Co. v. United States,* 138 Ct.Cl. 97, 99, 149 F.Supp. 898 (1957), *cert. denied,* 355 U.S. 826, 78 S.Ct. 34, 2 L.Ed.2d 39 (construing *United States v. Blair,* 321 U.S. 730, 737, 64 S.Ct. 820, 88 L.Ed. 1039 (1944)). As our appellate authority held:

> Quite logically where the subcontract absolves the prime contractor from liability to his subcontractor there can be no derivative liability of the Government to the subcontractor even where the Government would otherwise be culpable, for actual damage to the prime is a prerequisite to recovery either for himself or for those subordinate to him.

*Gardner Displays Co. v. United States,* 171 Ct.Cl. 497, 346 F.2d 585, 586–87 (1965).

Because Plaintiff's teaming agreements with ILC Dover and CUBRC clearly indicate that Plaintiff was under no obligation to compensate its teammates for their B & P costs, Gentex may not recover those costs on their behalf in this action.[5] Gentex's post hoc agreement to reimburse their B & P costs *if* it recovers them in this action does not create an obligation or liability sufficient to imbue Gentex with the requisite actual injury necessary for standing. Absent such obligation, the Court would be allowing a plaintiff to raise another entity's legal rights and

---

4. Nor are they parties to this lawsuit; the Plaintiff is Gentex alone not the Gentex team.

5. This ruling is consistent with the longstanding principle that a prime contractor may bring an action against the United States on behalf of its subcontractor where the prime has suffered actual damages and has reimbursed its subcontractor for such damages or remains liable for such reimbursement in the future. *J.L. Simmons Co. v. United States,* 158 Ct.Cl. 393, 397, 304 F.2d 886 (1962).

recover the damages of nonparties in disregard of traditional threshold requirements of standing. *Allen,* 468 U.S. at 751, 104 S.Ct. 3315.

### Gentex May Not Recover Profit As Part Of Its Bid Preparation And Proposal Costs

Plaintiff has asked that a 15% mark-up, or "profit," be included in its bid preparation and proposal costs.[6] However, because profit is not a cost incurred in the bid preparation and proposal process, the Court denies recovery.

The Comptroller General has expressly recognized that "[a] protestor may not recover profit on its own employees' time in filing and pursuing protests or preparing bids or proposals." *John Peeples—Claim for Costs,* 91–2 CPD ¶ 125, 1991 WL 162540 (Aug. 5, 1991). Instead, bid proposal costs "must be based upon *actual rates of compensation,* plus reasonable overhead and fringe benefits, and not market rates." *Id.* (emphasis added) (citing *W.S. Spotswood & Sons, Inc.—Claim for Costs,* 90–2 CPD ¶ 50, 1990 WL 293706 (July 19, 1990)); *see also Rocky Mountain Trading Company,* 89–3 BCA ¶ 22,110, 1989 WL 84262 (July 26, 1989) (protestor improperly calculated the hourly rate of its president in its request for bid preparation and proposal costs because the rate likely included profit, "and costs do not include an allowance for recovery of profit.") In *Lion Raisins, Inc. v. United States,* 52 Fed.Cl. 629 (2002), this Court cited with approval GAO's decision in *Spotswood* for the proposition that "claimed costs must be based on actual rates of compensation and reasonable overhead and fringe, but cannot include profit." *Lion,* 52 Fed.Cl. at 635.

The determination that profit cannot be recovered as an element of B & P costs is consistent with the principle recognized by this Court that bid preparation and proposal costs are a type of reliance damages. *La Strada Inn, Inc. v. United States,* 12 Cl.Ct.

110, 115 (1987) ("Put in terms of basic contract doctrine, the law grants [bid preparation and proposal] damages to the disappointed bidder based on his reliance interest, not his expectation interest." Restatement (2nd) of Contract Section 344 at 102–03 (1981)). Reliance damages are appropriate here because Plaintiff's proposal efforts have been wasted in reliance upon the Government's obligation to treat its bid fairly,—an obligation encompassed in regulation which the Government violated. *See also Hansen Bancorp., Inc. v. United States,* 367 F.3d 1297 (2004) (as reliance damages, the non-breaching party "may recover expenses of preparation of part performance as well as other foreseeable expenses incurred in reliance upon the contract.") (citations omitted). Reliance damages restore the non-breaching party "to its pre-contract position by returning as damages the *costs* incurred in reliance on the contract." *LaSalle Talman Bank v. United States,* 317 F.3d 1363, 1376 (Fed.Cir.2003) (emphasis added) (citing *Acme Process Equipment Co. v. United States,* 347 F.2d at 530).

Returning a disappointed bidder to its pre-bid position wherein it recovers the cost of its wasted bid preparation and proposal costs also comports with longstanding precedent awarding bid preparation and proposal costs under the theory of breach of the implied contract of fair dealing. In *Keco Industries, Inc. v. United States,* 192 Ct.Cl. 773, 428 F.2d 1233 (1970), the Court of Claims ruled that "if it should be determined ... that Plaintiff's bid was not treated honestly and fairly by the Government, then Plaintiff should be allowed to recover *only* those costs incurred in preparing its technical proposals and bid." *Keco,* 428 F.2d at 1240 (emphasis added); *accord Heyer Products Co., Inc. v. United States,* 135 Ct.Cl. 63, 140 F.Supp. 409, 413–14 (1956) (if the obligation to honestly consider bids is breached and Plaintiff is put

---

6. Plaintiff makes the following arguments in support of its position: (1) DCAA erroneously defined "costs" as costs to the contractor, when it really means costs to the Government; (2) the standard restitutionary remedy includes the innocent party's profits as part of the costs to be paid by the breaching party; (3) a contractor's recovery is generally based on price; (4) remedi-

al statutes must be read broadly to provide full relief to the injured party; (5) GAO decisions disallowing recovery of profit are based on faulty reasoning; and (6) payment of profit is consistent with federal policies. These arguments do not persuade the Court that Gentex is entitled to recover profit on its B & P costs.

to needless expense in preparing its bid, it is entitled to recover such expenses). In the instant case, because Gentex has not "incurred" a profit markup as a cost or expense of preparing its proposal, it may not recover such a profit.

### Conclusion

Plaintiff has not established entitlement to its teammates' B & P costs or profit on its own B & P costs. Plaintiff's Motion for Partial Summary Judgment is **DENIED**, and Defendant's Motion for Partial Summary Judgment is **GRANTED**.

The parties are directed to file their proposed redactions with the Court no later than **June 15, 2004.**